403 So.2d 1307 (1981)
David Allen MILLER, Petitioner,
v.
STATE of Florida, Respondent.
No. 56831.
Supreme Court of Florida.
May 28, 1981.
Rehearing Denied July 28, 1981.
*1309 Jerry Hill, Public Defender, Bartow, and Karal B. Rushing, Asst. Public Defender, St. Petersburg, for petitioner.
Jim Smith, Atty. Gen., and James S. Purdy, Asst. Atty. Gen., Tampa, for respondent.
OVERTON, Justice.
This is a petition for writ of certiorari to review the decision of the Second District Court of Appeal, reported at 369 So.2d 619 (Fla.2d DCA 1979), and concerns the impoundment and inventory search of a motor vehicle owned by the petitioner. The police failed to advise the petitioner, who was present, of alternatives other than impoundment. There is conflict that needs resolution. The Second District Court of Appeal, in the decision sought to be reviewed, in State v. Sanders, 387 So.2d 391 (Fla.2d DCA 1980), and in State v. Dearden, 347 So.2d 462 (Fla.2d DCA 1977), has held that a law enforcement officer has no duty to advise a silent arrestee that his car is being impounded or to tell a defendant of the options to impoundment. On the other hand, the Fourth District Court of Appeal has clearly held that an officer has an obligation to advise an arrestee of the alternatives available to him instead of impoundment. Session v. State, 353 So.2d 854 (Fla. 4th DCA 1977); Jones v. State, 345 So.2d 809 (Fla. 4th DCA 1977); State v. Jenkins, 319 So.2d 91 (Fla. 4th DCA 1975). We have jurisdiction. Art. V, § 3(b)(3), Fla. Const. (1972).
We resolve the conflict and approve the doctrine of an inventory search as authorized by the United States Supreme Court in South Dakota v. Opperman, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976). In summary, in accordance with that decision, we hold: (1) the purpose of an inventory search is a caretaking function exclusively for (a) protection of the owner's property, (b) protection of the police from claims and disputes over lost or stolen property which has been impounded, and (c) protection of the police from danger; (2) an inventory search is not conducted in order to discover evidence of a crime, and any suggestion that standard police procedure for an inventory search is actually a pretext for an investigative search will require the search to meet traditional probable cause standards or be invalidated; (3) there must be a threshold inquiry by the trial court to determine that the impoundment was for the above purposes and was reasonable and necessary under the circumstances; and (4) when the owner or possessor of the vehicle is present, the arresting officers must advise him or her that the motor vehicle will be impounded unless the owner or possessor can provide a reasonable alternative to impoundment; however, consultation with the owner or possessor is not required in circumstances where the vehicle is unattended, its owner is not reasonably available, or its owner or possessor is mentally incapacitated.
The relevant facts in the instant case are as follows. The arresting officers initially saw petitioner drive through a red light. They motioned him to stop, and petitioner drove into a parking lot of a private business. When asked for his driver's license, the petitioner gave the officers a license receipt, which the officers discovered was *1310 not petitioner's. The officers arrested petitioner for obstruction of justice, and he was placed in the police cruiser. The arresting officers then inventoried the contents of petitioner's truck, during which they discovered the controlled substance phencyclidine. In the trial court, petitioner filed a motion to suppress on the grounds that it was an improper search without a warrant and that the officers had failed to tell the petitioner that they were going to impound his vehicle. The trial court granted the motion to suppress. On appeal the district court reversed, holding the search valid and stating: "[W]e do not think that a law enforcement officer has a duty to tell a silent arrestee that his car is being impounded." 369 So.2d at 619. The district court qualified this holding by stating that its ruling in this cause "should not be interpreted to mean that the police may in any way mislead a defendant as to their intention to impound or that a defendant may otherwise be denied the right to request a reasonable alternative to impoundment." 369 So.2d at 620, n. 1.
The fourth amendment to the United States Constitution[1] and section 12 of Article I of the Florida Constitution[2] prohibit unreasonable searches and require warrants issued by a detached magistrate upon a showing of probable cause. There are, however, a number of "exceptions" to this warrant requirement. In the words of Justice Black:
[T]he fourth amendment does not require that every search be made pursuant to a warrant. It prohibits only "unreasonable searches and seizures." The relevant test is not the reasonableness of the opportunity to procure a warrant but the reasonableness of the seizure under all the circumstances. The test of reasonableness cannot be fixed by per se rules; each case must be decided on its own facts.
Coolidge v. New Hampshire, 403 U.S. 443, 509-10, 91 S.Ct. 2022, 2059-60, 29 L.Ed.2d 564 (1971) (Black, J., concurring and dissenting).
Exceptions to the warrant requirement include: (1) items or communications within the officer's sight, under certain circumstances such as the "plain view" doctrine, Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), or the "open fields" doctrine, Hester v. United States, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924); (2) abandoned premises or property involving no invasion of privacy, Abel v. United States, 362 U.S. 217, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960); (3) a search by consent or waiver of one's fourth amendment right against an unreasonable search, Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); (4) a "stop-and-frisk" upon restricted circumstances and limited to a pat-down search to protect the officer from possible danger, Ybarra v. Illinois, 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979); Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); (5) a search by officers who are in "hot pursuit," which is allowed by the exigency of the circumstances, Warden v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967); (6) the search incident to a lawful arrest of a suspect, conducted to protect the officer's safety and prevent the possible loss or destruction of evidence, Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 *1311 L.Ed.2d 685 (1969); and (7) a "motor vehicle search" based upon probable cause that it contains evidence of a crime, justified by the inherent mobility and the diminished expectation of privacy connected with a vehicle. United States v. Chadwick, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977); Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925).
The automobile inventory search is different. It is not an investigative search but is allowed because it is a necessary part of the caretaking function of the police when an impoundment occurs. It is a relatively new exception to the warrant requirement and is still in a sensitive, developing stage. An inventory of an automobile lawfully impounded has as its purpose the protection of the owner's property, whereas the other warrantless searches, with the exception of inadvertent "searches" such as those coming under the "plain view" doctrine, have as their intent the discovery of weapons or evidence of a crime. Because an inventory's purpose is basically for the protection of the owner, the use of discovered criminal evidence used to his detriment in criminal proceedings has been the subject of several critical commentaries.[3] It is apparent from the case law that there is still some confusion among law enforcement officers, prosecutors, and judges about the nature and purpose of this unique type of warrantless search. The doctrine has, under certain conditions, been approved by the United States Supreme Court. South Dakota v. Opperman, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976).
In Opperman the Supreme Court expressly identified the automobile inventory procedure as a caretaking, noncriminal one having three purposes: (1) the protection of the owner's property while it remains in police custody; (2) the protection of the police against claims or disputes over lost or stolen property; and (3) the protection of the police from potential danger from the contents in their custody. 428 U.S. at 369, 96 S.Ct. at 3097. The first and primary purpose is for the benefit of the vehicle owner, and the other two purposes are incidental to and supportive of the first. These latter two justifications do not arise at all unless there is sufficient reason for the police to impound and take responsibility for the vehicle in the first instance.
Impoundment in Opperman was held necessary and proper, since the vehicle was unattended, illegally parked in a restricted zone, and had received two parking tickets over a seven-hour period. The second ticketing officer reported the vehicle to police headquarters, which resulted in the vehicle's impoundment in accordance with standard procedure. While at the city's impoundment lot, an officer using a standard inventory form itemized the contents of the vehicle. In so doing, he found marijuana contained in a plastic bag in the unlocked glove compartment. The owner of the vehicle was subsequently arrested on charges of possession of marijuana. Its discovery by inventory search was the critical issue on the motion to suppress. The Supreme Court upheld the search and conviction, holding that the inventory procedure was a search under the fourth amendment, but characterized the process in this manner:
The ... police were indisputably engaged in a caretaking search of a lawfully impounded automobile... . The inventory was conducted only after the car had been impounded for multiple parking violations. The owner, having left his car illegally parked for an extended period, and thus subject to impoundment, was not present to make other arrangements for the safekeeping of his belongings. The inventory itself was prompted by the presence in plain view of a number of valuables inside the car. As in Cady, *1312 there is no suggestion whatever that this standard procedure, essentially like that followed throughout the country, was a pretext concealing an investigatory police motive.
428 U.S. at 375, 96 S.Ct. at 3100 (emphasis supplied). The court concluded that this inventory search was not unreasonable under the fourth amendment.
Opperman is a tenuous five-four decision, with Justice Powell writing a special concurring opinion in which he expressed the view that:
the unrestrained search of an automobile and its contents would constitute a serious intrusion upon the privacy of the individual in many circumstances. But such a search is not at issue in this case. As the Court's opinion emphasizes, the search here was limited to an inventory of the unoccupied automobile and was conducted strictly in accord with the regulations of the ... Police Department. Upholding searches of this type provides no general license for the police to examine all the contents of such automobiles.
428 U.S. at 379-80, 96 S.Ct. at 3102-03 (emphasis supplied) (footnotes omitted).
Opperman concluded that limited vehicle inventory searches, conducted in good faith according to routine police procedures for the purpose of protecting the property, do not violate the fourth amendment to the United States Constitution.
This Court has not had occasion prior to this case to expressly rule on the constitutionality of vehicle inventory searches. We now hold, as Opperman did on federal grounds, that inventory searches, conducted in good faith according to routine police procedures in order to protect property, do not violate section 12 of Article I of the Florida Constitution. We emphasize that in considering the admissibility in a criminal trial of evidence discovered in an inventory search after impoundment, the trial court must first determine whether the impoundment was lawful, reasonable, and necessary.
Our district courts of appeal have spoken on this issue in their application of the inventory search doctrine. In Miller v. State, 137 So.2d 21 (Fla.2d DCA 1962), the Second District Court of Appeal found the scope of a search beneath the floor mat of an impounded car beyond that required to safeguard any valuables in the car. Godbee v. State, 224 So.2d 441 (Fla.2d DCA 1969), recognized that the purpose of impounding the car and inventorying its contents was to preserve them and protect the police from possible responsibility in the event of theft or damage. These interests in that case justified even forcing open the impounded car. The Second District Court of Appeal in Altman v. State, 335 So.2d 626 (Fla.2d DCA 1976), reviewed the inventory search cases following Miller and Godbee and found in them a common pattern that the police must act in good faith and not use the inventory search as a subterfuge to conduct a warrantless search for incriminating evidence.
Related to this requirement of good faith is the actual need to impound the vehicle. Several district court of appeal cases have found no need for impoundment where the defendant offers reasonable alternatives. Jones v. State, 345 So.2d 809 (Fla. 4th DCA 1977); Altman; Chuze v. State, 330 So.2d 166 (Fla. 4th DCA 1976); Weed v. Wainwright, 325 So.2d 44 (Fla. 4th DCA 1975), cert. denied, 336 So.2d 605 (Fla. 1976); State v. Jenkins, 319 So.2d 91 (Fla. 4th DCA 1975). In Altman, Judge Scheb, speaking for the Second District Court of Appeal, held that an underlying necessity for police impoundment did not exist where the defendant expressed the desire and had the ability to have a third person remove his automobile without police intervention. The opinion stated:
When the driver of a motor vehicle is arrested and a reliable friend is present, authorized and capable to remove an owner's vehicle which is capable of being safely removed; or where the arrestee expresses a preference as to towing service and designates an appropriate carrier and destination for the vehicle, it is unnecessary for the police to impound it. *1313 In either of these instances the rationale for an inventory search does not exist.
335 So.2d at 629 (footnote omitted.) We fully agree with and approve Judge Scheb's opinion in Altman.
What are reasonable and necessary impoundments? In our view, they include: (1) an unattended car illegally parked or otherwise illegally obstructing traffic, an illustration of which is the factual situation in the Opperman case; (2) an unattended car at the scene of an accident where the driver is physically or mentally incapable of deciding what steps to take to deal with his vehicle such as might occur when the driver is seriously injured, mentally incapacitated, or severely intoxicated; (3) an abandoned vehicle; (4) a mechanically defective vehicle which, if driven, could menace others on the public highway; (5) a vehicle identified as stolen.[4] There may be other circumstances; this list is not all-inclusive.
The state has the burden to show that the impoundment was lawful, reasonable, and necessary under the circumstances of the cause. Clearly, just an arrest of an individual who happens to be in a motor vehicle without anything more does not justify impoundment.
The test of the impoundment reasonableness is the same as other traditional tests for searches and seizures under the fourth amendment: a balancing of the state's interest being served  i.e., the necessity for impoundment  against the vehicle owner's right to be secure against unlawful seizures.
In determining the reasonableness and necessity for impoundment, consideration must be given to available alternatives when a competent owner or possessor is present or reasonably available.
In the instant case the question to be resolved is whether the police must advise a present owner or possessor that his vehicle is being impounded.[5] Our district courts are divided on this question. Compare Session v. State, 353 So.2d 854 (Fla. 4th DCA 1977); Jones v. State, 345 So.2d 809 (Fla. 4th DCA 1977); and State v. Jenkins, 319 So.2d 91 (Fla. 4th DCA 1975); with State v. Sanders, 387 So.2d 391 (Fla.2d DCA 1980); Fields v. State, 369 So.2d 603 (Fla. 1st DCA 1978), cert. denied, 368 So.2d 1366 (Fla. 1979); and State v. Dearden, 347 So.2d 462 (Fla.2d DCA 1977).
In our opinion, if the primary purpose of impoundment and an inventory search is for security and protection of the vehicle's contents, it necessarily follows that the owner or possessor who is reasonably available must be consulted concerning the impoundment. Accord, Mozzetti v. Superior Court, 94 Cal. Rptr. 412, 4 Cal.3d 699, 484 P.2d 84 (1971); Arrington v. United States, 382 A.2d 14 (D.C. 1978); United States v. Pannell, 256 A.2d 925 (D.C. 1969); State v. Boster, 217 Kan. 618, 539 P.2d 294 (1975); State v. Rome, 354 So.2d 504 (La. 1978); State v. Sawyer, 174 Mont. 512, 571 P.2d 1131 (1977); State v. Slockbower, 79 N.J. 1, 397 A.2d 1050 (1979); State v. Ercolano, 79 N.J. 25, 397 A.2d 1062 (1979). We base our conclusion on section 12 of Article I of the Florida Constitution and the fourth amendment to the United States Constitution, as interpreted by the United States Supreme Court in Opperman. Our reading of Opperman leads us to a firm conclusion that a majority of the United States Supreme Court would not have approved that inventory search on federal grounds if the driver or owner of the vehicle had been present or reasonably available. The plurality opinion takes special care to mention that "[t]he owner ... was not present to make other arrangements for the safekeeping of his belongings." 428 U.S. at 375, 96 S.Ct. at 3100. In his concurring opinion, Justice Powell comments that "[t]he owner or prior occupant of the automobile is not present, nor, in many cases, is there any real likelihood that he could be located within a reasonable period of time." 428 U.S. at 384, 96 S.Ct. at 3104.
*1314 The state in the instant case not only contends that there should be no obligation on the part of the impounding officer to consult with the owner or possessor of the impounded property but also contends that if the officer acts in good faith, the inventory search must be upheld even though impoundment was not necessary under the circumstances. We find this contention has no justifiable legal basis.
We are not holding that every failure of an arresting officer to consult with the owner or possessor concerning the alternatives to impoundment will result in the suppression of all evidence obtained as the fruit of a resulting inventory search. We have previously mentioned examples, not all-inclusive, of situations where impoundment is reasonable and necessary, and consultation would be impossible or inappropriate. What we hold is that an officer, when arresting a present owner or possessor of a motor vehicle, must advise him or her that the vehicle will be impounded unless the owner or possessor can provide a reasonable alternative to impoundment. An inventory search of a motor vehicle without such advice or consultation to a present owner or possessor upon arrest results in an unreasonable search under the United States and Florida constitutions and must be excluded under the Florida constitutional exclusionary rule.
Nothing in this opinion affects those situations in which there is probable cause that a vehicle contains or constitutes evidence of a crime which justifies a reasonable search. In the instant case the state readily concedes that there was no probable cause to justify the search.
For the reasons expressed, we quash the decision of the district court of appeal in the instant case and approve the decision of the Fourth District Court of Appeal in Session v. State. The district court in the instant case expressly declined to consider whether there was evidentiary support for the trial court's finding that the officers had failed to tell the petitioner they were going to impound the vehicle. Such a finding, in the district court's view, was irrelevant. We have now held to the contrary, and this cause is remanded to consider that issue in accordance with the views expressed in this opinion.
It is so ordered.
SUNDBERG, C.J., and ADKINS, ENGLAND and McDONALD, JJ., concur.
ALDERMAN, J., concurs in part and dissents in part with an opinion with which BOYD, J., concurs.
ALDERMAN, Justice, concurring in part, dissenting in part.
I agree that warrantless inventory searches of motor vehicles are permissible under the United States and the Florida Constitutions. I do not agree with the majority's conclusion that arresting officers must advise the present owner or possessor of the vehicle that it will be impounded unless the owner or possessor can provide a reasonable alternative to impoundment and that an inventory search without such advice, except under certain circumstances, is unreasonable. This result is not required by any United States Supreme Court decision, particularly South Dakota v. Opperman, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976), on which the majority relies.
The fourth amendment only protects citizens from unreasonable searches and seizures. Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). Using the reasonableness test, the United States Supreme Court has validated warrantless inventory searches of motor vehicles where the search was to ensure the safety of the police, Cooper v. California, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967), where the search was to safeguard the owner's property, and where the search was to protect the community's safety, Cady v. Dombrowski, 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973). The focus in this case then should be on the reasonableness of the search, not on what the defendant might have done if he had been advised that his automobile would be impounded unless he provided a reasonable alternative *1315 to impoundment. See also Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968).
The majority believes that the United States Supreme Court would not have approved the inventory search in Opperman if the owner of the automobile had been present or reasonably available. A close analysis of Opperman and its supporting authorities reveals that this was not a result the Court would have undoubtedly reached. The Opperman Court first reviewed the legal status of motor vehicles, noted that they are protected by the fourth amendment, recognized that search warrant requirements are not as strict for them as they are for the home or office, and held that warrantless inventory searches of such vehicles are permissible under the federal constitution. The Court cited several state cases which permit this type of intrusion, among them Godbee v. State, 224 So.2d 441 (Fla.2d DCA 1969), where, the Florida court stated, "[t]he reasonableness of any search without a warrant is measured from the standpoint of the conduct of the searchers. If their conduct is in some way reprehensible; or if they precipitate a search and are motivated therein solely by a desire to `hunt' for incriminating evidence; or if they do so without any plausible explanation or justification; the invasion is an unreasonable one." Relying on Cooper, Harris, and Cady, the Court decided Opperman on the basis that reasonableness cannot be fixed by per se rules but depends on the facts and circumstances of each case. The Court concluded the police had followed standard police procedures and that their conduct was not "unreasonable" under the fourth amendment. The Court pointed out that the "consent" theory advanced by the dissenters in Opperman rested on the faulty assumption that an inventory is exclusively for the protection of the automobile owner. It is not. The Court said the other two reasons for inventory searches  protection of the police and protection of the public  are also crucial. 428 U.S. at 374, 96 S.Ct. at 3099.
By unduly emphasizing the need to protect the owner's property, over other valid reasons for inventory searches, the majority has gone beyond the dictates of the United States Supreme Court. Cooper, Harris, Cady and Opperman only require a warrantless inventory search of a motor vehicle to be tested for its reasonableness. The reasonableness of an inventory search cannot be fixed by per se rules; each case must be decided on its own facts. In the present case, as was the case in Opperman, there is no suggestion that the inventory search of defendant's automobile was a pretext concealing an investigatory police motive. Under the circumstances of this case, the impoundment of defendant's automobile was reasonable. That being the case, the inventory search was proper.
I agree with the district court that a law enforcement officer has no duty to warn a silent arrestee before his car is impounded. As stated by Judge Danahy, to hold otherwise "would not in any way be increasing a defendant's protection against unreasonable searches and seizures," and "we would be placing an unnecessary burden on the police in the already difficult situation which an arrest usually produces." State v. Miller, 369 So.2d 619 (Fla.2d DCA 1979). For these reasons, I dissent from this unnecessary establishment of a per se exclusionary rule that invalidates an otherwise reasonable and proper inventory search.
BOYD, J., concurs.
NOTES
[1] IV.
The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.
[2] 12.
Searches and seizures.  The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures, and against the unreasonable interception of private communications by any means, shall not be violated. No warrant shall be issued except upon probable cause, supported by affidavit, particularly describing the place or places to be searched, the person or persons, thing or things to be seized, the communication to be intercepted, and the nature of evidence to be obtained. Articles or information obtained in violation of this right shall not be admissible in evidence.
[3] See, e.g., Baker and Khourie, Improbable Cause  The Poisonous Fruits of a Search after Arrest for a Traffic Violation, 25 Okla.L.Rev. 54, 63-73 (1972); Moylan, The Inventory Search of an Automobile: A Willing Suspension of Disbelief, 5 Balt.L.Rev. 203 (1976); 87 Harv.L.Rev. 835, 848-853 (1974); 39 La.L.Rev. 995 (1979). See also 14 Wake Forest L.Rev. 259 (1978).
[4] State v. Singleton, 9 Wash. App. 327, 332-33, 511 P.2d 1396, 1399-1400 (Ct.App. 1973).
[5] The scope of the inventory search is not an issue in this case.