REVISED OPINION
HUBBART, Judge.
The central question presented for review is whether Miller v. State, 403 So.2d 1307 (Fla.1981), which prescribes certain requirements for inventory searches of impounded vehicles under the Fourth Amendment to the U.S. Constitution and Article I, Section 12 of the Florida Constitution, is still good law in view of the subsequent 1983 amendments to Article I, Section 12 of the Florida Constitution. We hold that Miller is unaffected by the above amendments and is still good law because (1) Miller constitutes, in part, an authoritative interpretation of the Fourth Amendment, which interpretation the subject amendments in no way limit and (2) Miller constitutes, as well, an authoritative interpretation of Article I, Section 12 of the Florida Constitution, which interpretation accords a person no greater rights than that enjoyed under the Fourth Amendment — a result which the subject amendments permit. We, accordingly, affirm the order under review which suppresses certain evidence seized by the police from the defendant’s car in violation of the standards established by the Miller decision.
I
The facts of this case are entirely undisputed. On July 30, 1984, the defendant Searill Constantine Small was charged by information in two counts with: (1) trafficking in cannabis in violation of Section 893.135, Florida Statutes (1983), and (2) manufacture, possession with intent to sell, or delivery of cannabis in violation of Section 893.13(l)(a), Florida Statutes (1983), which information was filed before the Circuit Court for the Eleventh Judicial Circuit in and for Dade County, Florida. The defendant Small entered a plea of not guilty to these charges and filed a motion to suppress a certain quantity of cannabis which had been seized from him by the police.
The motion to suppress alleged that on July 8, 1984, at approximately 2:25 P.M., the defendant Small was driving a 1984 Buick automobile at N.W. 27 Avenue and 169 Terrace in Dade County, Florida. Police officers observed that the license tag on this vehicle had expired and accordingly stopped the defendant. It was then learned that the defendant was driving *785 with a suspended driver’s license, and he was arrested on this charge. After placing the defendant in the rear of the police car, the police officers proceeded to conduct an inventory search of the Buick automobile. The police officers gave the defendant Small no advisements of any kind prior to conducting the inventory search, and, con-cededly, the defendant did not consent to the subject search. The police officers opened the trunk to the car and seized several burlap bags containing cannabis. This evidence, in turn, formed the basis for the instant prosecution against the defendant below.
The state, in effect, stipulated to the above facts in a written pleading filed with the trial court, conceding that “[pjrior to the inventory search, the defendant was not advised that his motor vehicle would be impounded unless the defendant could provide a reasonable alternative, pursuant to Miller v. State, 403 So.2d 1307 (Fla.1981).” (R.26). The state further agreed that, although the defendant’s arrest was valid, the search of the car trunk herein was not incident to the defendant’s arrest or otherwise based on probable cause. Instead, the state contended that the search constituted a valid inventory search of an impounded vehicle, notwithstanding the admitted noncompliance by the police with Miller, supra, because, it was urged, Miller is no longer good law in view of the subsequent 1983 amendments to Article I, Section 12 of the Florida Constitution. The trial court disagreed and granted the motion to suppress. The state appeals.
II
In determining the question presented by this case, it is essential to consult the governing constitutional law on the authority of state courts, in general, to interpret the Fourth Amendment, and Florida courts, in particular, to interpret Article I, Section 12 of the Florida Constitution. It is also essential to analyze the impact of this established law on the Miller decision.
A
It is well-settled that the Fourth Amendment guarantees a right implicit in a concept of ordered liberty and is therefore enforceable against the states through the Due Process Clause of the Fourteenth Amendment.[1] It is also well-settled that, subject to certain exceptions, any evidence secured by state officials in violation of the Fourth Amendment is inadmissible in evidence in a state court against the victim of the search.[2] This being so, state courts are mandated to apply federal constitutional standards under the Fourth Amendment, as interpreted by the United States Supreme Court, in determining whether state officials have complied with the Fourth Amendment. This necessarily requires state courts to make a substantive determination of the reasonableness of a given search conducted by state officials in the light of the fundamental criteria laid down by the Fourth Amendment and the opinions of the United States Supreme Court applying that Amendment — subject, of course, to United States Supreme Court review. In so doing, state courts are authorized to interpret and apply the Fourth Amendment in a manner which is faithful to the above-stated federal standards; they are not authorized, however, to interpret or apply the Fourth Amendment contrary to such feder- *786 al standards, regardless of whether such interpretation gives the individual greater or lesser protection.[3]
It is, further, a well-settled principle of federal constitutional law that state courts, in interpreting and applying their own state constitutional provisions and law on search and seizure, may impose more restrictive standards on state police activity and thereby accord a person greater rights than that required by the Fourth Amendment as interpreted by the United States Supreme Court.[4] In no event, however, may state courts interpret their own constitution and laws so as to authorize police conduct which violates a person’s Fourth Amendment rights.[5] In keeping with this established law, Florida courts prior to 1983 interpreted our state constitutional provision on search and seizure so as to accord the individual, on occasion, greater rights than enjoyed under the Fourth Amendment.[6]
The Florida electorate, however, in the November 1982 elections, approved certain amendments to Article I, Section 12 of the Florida Constitution, effective January 1, 1983, which preclude Florida courts from interpreting the state constitutional guarantee on search and seizure so as to give an individual greater rights than that enjoyed under the Fourth Amendment, as interpreted by the United States Supreme Court. Florida decisions, such as State v. Sarmiento, 397 So.2d 643 (Fla.1981), which accomplish this prohibited result are therefore no longer good law;[7] indeed, the subject amendments were, in part, specifically aimed at overruling Sarmiento. The *787 amendments also adopt, in effect, the federal exclusionary rule as the state exclusionary rule for violations of the Florida constitutional provision on search and seizure.[8] As amended, Article I, Section 12 of the Florida Constitution reads as follows:
“The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures, and against the unreasonable interception of private communications by any means, shall not be violated. No warrant shall be issued except upon probable cause, supported by affidavit, particularly describing the place or places to be searched, the person or persons, thing or things to be seized, the communication to be intercepted, and the nature of evidence to be obtained. This right shall be construed in conformity with the 4th Amendment to the United States Constitution, as interpreted by the United States Supreme Court. Articles or information obtained in violation of this right shall not be admissible in evidence if such articles or information would be inadmissible under decisions of the United States Supreme Court construing the 4th Amendment to the United States Constitution.” (1983 amendments underscored).
These amendments, it should be noted, do not purport to limit the authority of the Florida courts to interpret and apply the Fourth Amendment. Indeed, it is dubious whether a state constitutional amendment could ever, constitutionally, accomplish such a result in view of Article VI, clause 2 of the United States Constitution:
“This Constitution ... shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding. ” (e.s.)
These amendments instead merely restrict the authority of the Florida courts to interpret and apply the right guaranteed by Article I, Section 12 of the Florida Constitution — which, clearly, the state has the constitutional authority to accomplish.
B
The Florida Supreme Court decision of Miller v. State, 403 So.2d 1307 (Fla.1981), constitutes an interpretation and application of both the Fourth Amendment to the United States Constitution and Article I, Section 12 of the Florida Constitution, wherein both constitutional provisions are interpreted and applied identically. The Court, by its decision, plainly accords no greater rights to the individual under Article I, Section 12 of the Florida Constitution than that accorded by the Fourth Amendment. In reaching its decision, the Court specifically adopts and applies the holding and principles of South Dakota v. Opperman, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976), an authoritative interpretation of the Fourth Amendment. The Coui’t states as follows:
“We ... approve the doctrine of an inventory search as authorized by the United States Supreme Court in South Dakota v. Opperman, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976). In summary, in accordance with that decision, we hold: (1) the purpose of an inventory search is a caretaking function exclusively for (a) protection of the owner’s property, (b) protection of the police from claims and disputes over lost or stolen property which has been impounded, and (c) protection of the police from danger; (2) an inventory search is not conducted in order to discover evidence of a crime, and any suggestion that standard police procedure for an inventory search is actually a pretext for an investigative search will require the search to meet traditional probable cause standards or be invalidated; (3) there must be a threshold inquiry by the trial court to determine that the impoundment was *788 for the above purposes and was reasonable and necessary under the circumstances; and (4) when the owner or possessor of the vehicle is present, the arresting officers must advise him or her that the motor vehicle will be impounded unless the owner or possessor can provide a reasonable alternative to impoundment; however, consultation with the owner or possessor is not required in circumstances where the vehicle is unattended, its owner is not reasonably available, or its owner or possessor is mentally incapacitated.
[[Image here]]
What we hold is that an officer, when arresting a present owner or possessor of a motor vehicle, must advise him or her that the vehicle will be impounded unless the owner or possessor can provide a reasonable alternative to impoundment. An inventory search of a motor vehicle without such advice or consultation to a present owner or possessor upon arrest results in an unreasonable search under the United States and Florida constitutions and must be excluded under the Florida constitutional exclusionary rule.”
Miller v. State, supra, at 1309, 1314.
The Miller decision represents good law today and is totally unaffected by the subsequent 1983 amendments to Article I, Section 12 of the Florida Constitution for two reasons. First, Miller constitutes, in part, an interpretation and application of the Fourth Amendment, which interpretation the above amendments in no way limit. Second, Miller constitutes, in part, an interpretation and application of Article I, Section 12 of the Florida Constitution, which interpretation accords no greater rights to the individual than that accorded by the Fourth Amendment — a result which the above amendments permit. In accord with this reasoning, at least one district court of appeal in Florida has, without discussion, applied the Miller decision to an inventory search conducted by police after the effective date of the above amendment.[9] It is therefore clear that Miller applies to the inventory search conducted by the police in the case at bar.
III
Turning now to the instant case, it is admitted by the state that the police conducted an inventory search of the defendant Small’s car without first advising the defendant of the alternatives to impounding the car — in violation of the standards established by Miller v. State, supra. That being so, the trial court was eminently correct in granting the defendant’s motion to suppress, and the order under review is in all respects
Affirmed.

. Wolf v. Colorado, 338 U.S. 25, 27-28, 69 S.Ct. 1359, 1361, 93 L.Ed. 1782, 1785 (1949) (“The security of one’s privacy against arbitrary intrusion by the police — which is at the core of the Fourth Amendment — is basic to a free society. It is therefore implicit in ‘the concept of ordered liberty’ and as such enforceable against the States through the Due Process Clause [of the Fourteenth Amendment]”); Stanford v. Texas, 379 U.S. 476, 481, 85 S.Ct. 506, 509, 13 L.Ed.2d 431, 434 (1965) ("It is now settled that the fundamental protections of the Fourth Amendment are guaranteed by the Fourteenth Amendment against invasion by the States.”)

. Mapp v. Ohio, 367 U.S. 643, 655, 81 S.Ct. 1684, 1691, 6 L.Ed.2d 1081, 1090 (1961) ("Since the Fourth Amendment's right of privacy has been declared enforceable against the States through the Due Process Clause of the Fourteenth, it is enforceable against them by the same sanction of exclusion as is used against the Federal Government.”)

. Ker v. California, 374 U.S. 23, 33-34, 83 S.Ct. 1623, 1630, 10 L.Ed.2d 726, 738 (1963) ("We reiterate that the reasonableness of a search is in the first instance a substantive determination to be made by the [state] trial court from the facts and circumstances of the case and in the light of the 'fundamental criteria’ laid down by the Fourth Amendment and in opinions of this [United States Supreme] Court applying that Amendment. Findings of reasonableness, of course, are respected only insofar as consistent with federal constitutional guarantees. As we have stated above and in other cases involving federal constitutional rights, findings of state courts are by no means insulated against examination here, (citations omitted) While this Court does not sit as in nisi prius to appraise contradictory factual questions, it will, where necessary to the determination of constitutional rights, make an independent examination of the facts, the findings, and the record so that it can determine for itself whether in the decision as to reasonableness the fundamental — i.e., constitutional — criteria established by this Court has been respected. The States are not thereby precluded from developing workable rules governing arrests, searches and seizures to meet ‘the practical demands of effective criminal investigation and law enforcement' in the States, provided that those rules do not violate the constitutional proscription of unreasonable searches and seizures and the concomitant command that evidence so seized is inadmissible against one who has standing to complain.”); Oregon v. Hass, 420 U.S. 714, 719, 95 S.Ct. 1215, 1219, 43 L.Ed.2d 570, 575-76 (1975).

. Cooper v. California, 386 U.S. 58, 62, 87 S.Ct. 788, 791, 17 L.Ed.2d 730, 734 (1967) ("[0]ur holding, of course, does not affect the State’s power to impose higher standards on searches and seizures than required by the Federal Constitution if it chooses to do so.”); Oregon v. Hass, 420 U.S. at 719, 720 n. 4, 95 S.Ct. at 1219 n. 4, 43 L.Ed.2d at 575, 576 n. 4 (“ [A] state is free as a matter of its own law to impose greater restrictions on police activity than this Court holds to be necessary upon federal constitutional standards” (e.s.) and a state may interpret its own state law and "constitutional prohibition of unreasonable searches and seizures as being more restrictive [on the police] than the Fourth Amendment of the federal constitution.” (quoting State v. Florance, 270 Or. 169, 527 P.2d 1202, 1208 (1974)).

. Sibron v. New York, 392 U.S. 40, 61, 88 S.Ct. 1889, 1901-02, 20 L.Ed.2d 917, 933-34 (1968) ("[A state] may not, however, authorize police conduct which trenches upon Fourth Amendment rights, regardless of the labels which it attaches to such conduct.”)

. See, e.g., State v. Sarmiento, 397 So.2d 643 (Fla.1981). "Prior to the amendment [to Article I, Section 12, Fla. Const.], the right of a citizen of the State of Florida to be free from unreasonable searches and seizures was guaranteed independently of the similar protection provided by the fourth amendment to the United States Constitution. Under article I, section 12 as it existed prior to the amendment, the courts of this state were free to provide its citizens with a higher standard of protection from governmental intrusion than that afforded by the federal constitution.” State v. Lavazzoli, 434 So.2d 321, 323 (Fla.1983).

. State v. Ridenour, 453 So.2d 193 (Fla. 3d DCA 1984).

. “The new amendment [to Article I, Section 12, Florida Constitution], however, links Florida's exclusionary rule to the federal exclusionary rule, making it also nothing more than a creature of judicial decisional policy and removing the ‘independent protective force of state law.’ ” State v. Lavazzoli, supra, at 323-24.

. McClendon v. State, 476 So.2d 1303 (Fla. 2d DCA 1985). Although not stated in the McClen-don opinion, the record on appeal in that case indicates that the automobile inventory search conducted therein took place on October 27, 1983 — over ten months after the effective date of the 1983 amendments to Article I, Section 12 of. the Florida Constitution.
In our original opinion in this cause, we cited as well to additional cases which we said reached the same result as McClendon. These cases, however, have been eliminated in this revised opinion, together with an inaccurate statement in the text of the opinion describing such cases, because we agree with the state in its motion for rehearing that the respective records on appeal in those cases indicate that the motor vehicle inventory searches conducted therein took place prior to the effective date of the above-stated 1983 amendments, although the decisions were rendered subsequent to the said amendments. See Padron v. State, 449 So.2d 811 (Fla.1984) (search conducted March 8, 1981); Sommer v. State, 465 So.2d 1339 (Fla. 5th DCA 1985) (search conducted June 23, 1982); Ross v. State, 428 So.2d 781 (Fla. 4th DCA 1983) (search conducted in November, 1981). We are grateful to counsel for this needed correction.