516 So.2d 1081 (1987)
STATE of Florida, Appellant,
v.
Michael Randall WILLIAMS, Appellee.
No. 87-395.
District Court of Appeal of Florida, Second District.
December 16, 1987.
*1082 Robert A. Butterworth, Atty. Gen., Tallahassee, and Katherine V. Blanco, Asst. Atty. Gen., Tampa, for appellant.
Howard L. Dimmig, II, Lakeland, for appellee.
LEHAN, Judge.
This case illustrates changes in recent years to constitutional law involving police searches of cars of arrested motorists. It also provides an example of the effect of the 1983 amendment to Article I, section 12 of the Florida Constitution upon federalism in Florida.[1]
The state appeals from the trial court's order granting defendant's motion to suppress evidence consisting of drugs and drug paraphernalia found during a search of defendant's car after his arrest for reckless driving and fleeing to elude an officer. The state characterizes the search as having been a valid search incident to the arrest. Defendant characterizes the search as an invalid inventory search incident to the impoundment of the car prior to which the police, contrary to the requirement of Miller v. State, 403 So.2d 1307 (Fla. 1981), failed to allow defendant to choose an alternative to the impoundment. Miller based that requirement upon both Florida and federal constitutional law. We reverse on the basis that the search was valid as incident to either the arrest or the impoundment.
Defendant was driving his car at a speed in excess of 110 miles per hour. The car skidded off the road and into a ditch where *1083 defendant was arrested, handcuffed, and placed in the police cruiser. The arresting officer called for a tow truck to impound defendant's car. No opportunity was given to defendant to arrange for an alternative disposition of the car. About ten minutes after defendant had been taken from his car, the officer searched the car and found the evidence which the trial court suppressed.
The court granted defendant's motion to suppress on the basis that the search was "in fact an impound inventory search and ... the Defendant was not apprised of reasonable alternatives to impoundment... ." There had been an oral, unexplained statement by the trial court, given as an affirmative answer to a question from defense counsel, that the search had not been contemporaneous to the arrest.
We agree with the state's argument that the officer's characterization of the search as an inventory search does not control. It is the actual nature of the search, not the label placed upon it by the officer, which controls. State v. Valdes, 423 So.2d 944 (Fla. 3d DCA 1982). We conclude that the evidence should not have been suppressed because the search was valid as having been incident and contemporaneous to defendant's arrest. See State v. Ogburn, 483 So.2d 500 (Fla. 3d DCA 1986); Bond v. State, 431 So.2d 343 (Fla. 2d DCA 1983).
That the trial court said that the search, which occurred approximately ten minutes after defendant was removed from his car and arrested, was not contemporaneous with the arrest is, in our view, not controlling. We agree with the trial court that to properly be a search incident to an arrest the search must have been contemporaneous with the arrest. See New York v. Belton, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981). But we disagree with defendant's argument that there was a factual finding in that regard to which an appellate court is bound. To have been contemporaneous with an arrest, a search must have been during the same time period as that of the arrest, not necessarily simultaneous with the arrest. See United States v. Fleming, 677 F.2d 602, 607-08 (7th Cir.1982); Valdes. That time period should be measured by the time during which the arresting officer performed, without significant delay, the duties normally performed by him incident to an arrest.
In this case the record indicates a largely uninterrupted sequence of events from the officer stopping defendant's car, arresting and handcuffing the defendant, obtaining defendant's wallet, placing defendant in the police cruiser, examining the wallet, radioing the dispatcher for information, and searching defendant's car. Certainly this was in contrast to the search in United States v. Chadwick, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), which, as Belton pointed out, was "conducted more than an hour after federal agents had gained exclusive control of the footlocker and long after respondents were securely in custody... ." 453 U.S. at 462, 101 S.Ct. at 2865, 69 L.Ed.2d at 776. Compare also Wells v. State, 492 So.2d 1375 (Fla. 5th DCA 1986); State v. Marini, 488 So.2d 551 (Fla. 5th DCA 1986). That the officer in this case before his search also radioed for a tow truck is no more significant than that the officer characterized the search as an inventory search, to wit, not significant.
Our conclusion follows the rationale of Belton that there be in these kinds of circumstances a readily applicable rule of law for police officers "who have only limited time and expertise to reflect on and balance the social and individual interests involved... ." 453 U.S. at 458, 101 S.Ct. at 2863, 69 L.Ed.2d at 774 (quoting Dunaway v. New York, 442 U.S. 200, 213-214, 99 S.Ct. 2248, 2256-57, 60 L.Ed.2d 824, 836 (1979)).
That at the time of the search defendant was securely in custody, handcuffed in the police cruiser without access to any potential weapon in defendant's car, and that, therefore, the officer's search was not to protect himself from defendant is also of no moment. See Bond; State v. Brock, 426 So.2d 1287 (Fla. 1st DCA 1983). As Belton says, "A custodial arrest of a suspect based on probable cause is a reasonable *1084 intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification." 453 U.S. at 461, 101 S.Ct. at 2864, 69 L.Ed.2d at 775 (quoting United States v. Robinson, 414 U.S. 218, 235, 94 S.Ct. 467, 476, 38 L.Ed.2d 427, 440 (1973)).
In the alternative, we conclude that the search was valid even to the extent it may be characterized as an inventory search. We conclude that the requirement of the Florida Supreme Court's opinion in Miller that an arrested driver be offered an alternative to the impoundment of his car no longer exists. Colorado v. Bertine, ___ U.S. ___, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987). In Bertine, the arrestee, like the defendant in this case, was not offered an alternative to the impoundment of his car. Quoting from Illinois v. Lafayette, 462 U.S. 640, 103 S.Ct. 2605, 77 L.Ed.2d 65 (1983), the United States Supreme Court said in Bertine that that did not matter:
[t]he real question is not what "could have been achieved," but whether the Fourth Amendment requires such steps... . The reasonableness of any particular governmental activity does not necessarily or invariably turn on the existence of alternative "less intrusive" means.
___ U.S. at ___, 107 S.Ct. at 742, 93 L.Ed.2d at 747. Noting that "inventory searches are now a well-defined exception to the warrant requirement of the Fourth Amendment," id. at ___, 107 S.Ct. at 741, 93 L.Ed.2d at 745, the Bertine opinion added that "reasonable police regulations relating to inventory procedures administered in good faith satisfy the Fourth Amendment... ." Id. at ___, 107 S.Ct. at 742, 93 L.Ed.2d at 747. In upholding the search, Bertine further noted that there was no showing the police chose to impound the arrestee's van to investigate suspected criminal activity. Id. at ___, 107 S.Ct. at 743, 93 L.Ed.2d at 747. In the case at hand, there was no showing of any lack of good faith by the officer. The record reflects that the officer performed the search following a checklist on a standardized form. There is no indication he deviated from the form. (Nor does it appear that Bertine, which was decided January 14, 1987, was called to the attention of the trial court whose suppression order was entered February 3, 1987.)
A good faith inventory search performed in accordance with reasonable police regulations need not be contemporaneous with the arrest. See 3 W. LaFave, Search and Seizure, § 7.1(c) n. 69. In Lafayette, cited and quoted in Bertine, the Supreme Court upheld an inventory search of an arrestee's personal effects that took place at the police station.
State v. Small, 483 So.2d 783 (Fla. 3d DCA 1986), which found continuing validity in Miller under federal law, was decided before Bertine was decided. The ruling of Bertine that offering reasonable alternatives to impoundment is not necessarily required is fully applicable in Florida due to the 1983 amendment to the provisions of Article I, section 12 of the Florida Constitution, that amendment having come into effect after Miller's reliance upon those provisions. The amendment added to Article I, section 12 the requirements that the right under the Florida Constitution to be secure against unreasonable searches and seizures "shall be construed in conformity with the 4th Amendment to the United States Constitution, as interpreted by the United States Supreme Court" and that "articles or information obtained in violation of this right shall not be admissible in evidence if such articles or information would be inadmissible under decisions of the United States Supreme Court construing the 4th Amendment to the United States Constitution."
Accordingly, police searches of arrested motorists' cars in Florida are now appreciably less restrained by the exclusionary rule under which unconstitutionally seized evidence is excluded from the evidence at trial. The case before us exemplifies the foregoing amendment to the Florida Constitution as having, in the words of the Florida Supreme Court, the effect of "removing the `independent protective force of state law.'" State v. Lavazzoli, 434 So.2d 321, 323-24 (Fla. 1983). Prior to the amendment *1085 to Article I, section 12 Floridians had, as recognized by Miller, the "substantive right [under specific wording of Article I, section 12] to have articles or information obtained as the result of an illegal search or seizure excluded from evidence in the courts of this state... ." State v. Bernie, 472 So.2d 1243, 1246 (Fla. 2d DCA 1985). Following the amendment Florida's exclusionary rule has been characterized by the Florida Supreme Court as "nothing more than a creature of judicial decisional policy" of the United States Supreme Court because the specific wording of the Fourth Amendment does not contain an exclusionary rule and "the federal exclusionary rule [is] preeminently a rule of court and only procedural." Lavazzoli, 434 So.2d at 323. As a result, rather than ensuring to Floridians rights under the federal constitution as the amendment to the Florida Constitution might seem to do, the amendment has the effect in this case of taking away a right not provided by the federal constitution.
Thus, Florida courts to a substantial extent are not a part of the trend which has been called "the new federalism" under which there has been a "growing role of the states in protecting civil rights... .," Abrahamson & Gutmann, "The New Federalism: State Constitutions and State Courts," 71 Judicature 88 (Aug.-Sept. 1987), and under which it has been said that "state judges ... have resumed their historic role as the primary defenders of civil liberties and equal rights." Wright, "In Praise of State Courts: Confessions of a Federal Judge," 11 Hastings Const. L.Q. 165, 188 (1984).
Reversed and remanded for proceedings consistent herewith.
DANAHY, C.J., and SCHOONOVER, J., concur.
NOTES
[1] "Federalism" could mistakenly be thought to connote prerogatives of the federal, i.e., national, government, but actually connotes concomitant prerogatives of the states under the federal, i.e., union of states, form of government.