529 So.2d 1226 (1988)
The STATE of Florida, Appellant,
v.
Larry SMITH, a/k/a Leroy Scrivens, Appellee.
No. 87-2001.
District Court of Appeal of Florida, Third District.
August 9, 1988.
*1227 Robert A. Butterworth, Atty. Gen., and Richard L. Kaplan, Asst. Atty. Gen., for appellant.
Sorondo and Baer, P.A., and Leonard F. Baer, Coral Gables, for appellee.
Before NESBITT, DANIEL S. PEARSON and JORGENSON, JJ.
JORGENSON, Judge.
The state appeals from an order of the trial court granting Smith's motion to suppress all evidence seized from an automobile search. For the reasons which follow, we reverse.
Around eleven o'clock in the evening, Metro-Dade police officers Hein and Del Guidice were on routine patrol in a police cruiser when they passed Smith and a passenger traveling in the opposite direction in a late model Cadillac. The officers were patrolling in an area where routine tag checks of vehicles had revealed several stolen cars. According to his testimony at the suppression hearing, Officer Hein made a U-turn in order to approach the Cadillac from the rear and run a check on the Cadillac's tag. When Hein made the U-turn, Smith quickly accelerated and made a sharp corner turn. Hein also came around the corner at a high rate of speed, believing that a chase would ensue. Once Hein rounded the corner, he had to slam on his brakes to avoid hitting the Cadillac which was parked at an angle, blocking an alleyway. The Cadillac's engine was running, and the doors were open. As the officers exited the patrol car, they observed Smith emerge from the driver's side of the Cadillac and Smith's passenger exit on the other side. Both men began to walk away *1228 from the Cadillac into the alley. Hein called to the men, motioned them back, and directed them to stand at the rear of the Cadillac in front of the patrol car. Hein questioned Smith while Del Guidice questioned the passenger. Hein asked Smith to produce his driver's license and registration. Smith denied being the driver of the Cadillac. He stated that he did not have his driver's license and did not remember his address, whereupon Hein, according to his testimony, informed Smith that he was being placed under arrest for failure to produce a license.[1]
Del Guidice testified that he searched the vehicle after Hein had placed Smith under arrest and, upon finding a gun in the back seat, told Hein to handcuff Smith. As Hein reached to unsnap his handcuffs case, Smith darted away. Hein ran after him before Del Guidice could tell his partner about the discovery of the gun. Approximately twenty minutes after Smith took flight, he was located by a canine unit and returned to the scene. While the search for Smith was continuing, Del Guidice stayed with the passenger, who produced a car rental agreement and told Del Guidice that his aunt had rented the car. Neither the passenger nor Smith were listed on the rental agreement as authorized drivers. Del Guidice searched the trunk of the Cadillac preparatory to having the vehicle impounded. The search revealed several bags of expensive new clothing. Inside one of the bags was a round, hard, light-colored object tightly wrapped in plastic which subsequently proved to be cocaine. Smith was arrested on charges of trafficking in cocaine, carrying a concealed firearm, lack of a valid driver's license, and obstruction. Smith was charged by information with trafficking in cocaine. He filed a sworn motion to suppress the contraband seized from the Cadillac. In its order granting the motion, the trial court made the following findings of fact and conclusions of law:
This cause having come on for consideration and Hearing upon Defendant's Motion To Suppress, and after hearing argument of counsel for the respective parties and the testimony of Officer Nicholas Del Guidice, Officer William Hein, and Larry Smith, a/k/a "LEROY SCRIVENS", the Defendant, and after weighing the credibility of the above witnesses, the Court makes the following findings of fact:
1. The car which was being driven by the Defendant was stopped by the police.
2. No probable cause existed for stopping the vehicle being driven by the Defendant. There was nothing unusual or otherwise suspicious about the Defendant or the passenger in the automobile in question.
3. The inventory search was not conducted in good faith and was merely a pretext to conduct a warrantless search. The Officers at all times had a duty to consult with the Defendant who was the possessor of the automobile concerning the impoundment of the automobile and they failed to do so. Furthermore, the police did not leave the Defendant alternatives to impound the automobile. The Officers could have consulted with the Defendant about the following alternatives but they failed to do so:
1. Giving the automobile to the passenger since he was not under arrest.
2. Calling the individual who the Officers claim the car was rented to and allowing her to remove the automobile.
3. Calling the rental car company and requesting they tow away the automobile.

*1229 4. The Defendant at no time abandoned the vehicle.
5. No evidence was presented that the vehicle was stolen and thus the Court finds the vehicle in question was not stolen.
6. The Officers gave conflicting statements as to when the Defendant was placed under arrest. Officer Del Guidice claims that he told Officer Hein, to handcuff the Defendant immediately after he found the gun inside the car. On the other hand, Officer Hein claims the Defendant was placed under arrest for failing to have a driver's license and then escaped as he was going to be handcuffed. Oddly enough, Officer Hein claims that he first learned of the gun by way of his police radio as he was pursuing the Defendant. In light of the conflict in testimony, it is reasonable to infer that Officer Del Guidice searched the vehicle in question prior to the Defendant being placed under arrest since the gun was found inside a pocket in the back seat of the car prior to the time he instructed Officer Hein to handcuff the Defendant.
Based on the above-mentioned findings of facts, it is
ORDERED AND ADJUDGED
That the Defendant's Motion To Suppress is hereby GRANTED.
Although a reviewing court must accept a trial court's findings of fact on a motion to suppress if they are supported by the evidence in the record, State v. Battleman, 374 So.2d 636 (Fla. 3d DCA 1979), such factual findings will be reversed where they are "clearly shown to be without basis in the evidence or predicated upon an incorrect application of the law." State v. Riocabo, 372 So.2d 126, 127 (Fla. 3d DCA), dismissed, 378 So.2d 348 (Fla. 1979); State v. Navarro, 464 So.2d 137, 139 (Fla. 3d DCA 1984) (en banc). Here, the critical findings of fact are without evidentiary support, and the law is incorrectly applied to those findings.[2]
The record fails to support the trial court's finding that the officers stopped the Cadillac. The officers' initial conduct was no more than an attempt to travel close enough to the Cadillac to be able to read and run a check on the license tag. The record does not reveal whether the patrol car's lights were ever activated. However, the record clearly reflects that when the officers reached the Cadillac, it already had come to an abrupt halt blocking the alleyway. Smith's testimony at the suppression hearing did not contradict this sequence of events. Smith stated that he pulled the Cadillac off the roadway into the middle of an alley, left the key in the ignition, the motor running, the doors open, and started to walk away from the vehicle. Nothing in Smith's testimony or the testimony of the officers suggests that the officers stopped him. Thus, the trial court's conclusion is not supported by the evidence.
The trial court's second finding, that no probable cause existed, is not relevant and, in any event, is controlled by the rationale of Michigan v. Chesternut, ___ U.S. ___, 108 S.Ct. 1975, 100 L.Ed.2d 565 (1988). Chesternut also involved an investigatory pursuit. Chesternut observed the approach of a police car on routine patrol and began to run. The officers accelerated briefly to catch up with him and then followed beside him as he continued to run. The officers did not activate a siren or flashers. No attempt was made to block Chesternut's way or control his direction or speed. The officers subsequently retrieved packets of drugs discarded by Chesternut once the patrol car pulled alongside him. Chesternut was arrested, searched, and charged with possession of contraband. Chesternut moved to dismiss the charges. In granting his motion, the presiding magistrate ruled that the police pursuit implicated fourth amendment protections and that the officers' conduct could not be justified merely because Chesternut ran at the sight of the police. The Michigan Court of Appeals affirmed.
*1230 The Supreme Court reversed, finding that the police conduct "would not have communicated to the reasonable person an attempt to capture or otherwise intrude upon ... freedom of movement." ___ U.S. at ___, 108 S.Ct. at 1980, 100 L.Ed.2d at 573. Thus, the police need not have had a particularized suspicion of criminal activity in order to pursue Chesternut. This court has also observed that the fourth amendment does not prevent the police from following an individual in his car on a public street. "No prior showing of probable cause or even reasonable suspicion is required for such surveillance because no interest protected by the Fourth Amendment is remotely invaded by such police conduct." Navarro, 464 So.2d at 142 (Hubbart, J., concurring). Measured against Chesternut and Navarro, the trial court's finding of no probable cause to stop Smith is clearly erroneous.
The trial court's concern with the perceived conflict in the officers' testimony regarding the timing of Smith's arrest and the search of the interior of the vehicle is misplaced. The record is uncontradicted that Hein had probable cause to arrest Smith for failure to produce a driver's license. Whether or not the Cadillac was searched prior to Smith's being placed under arrest is of no legal consequence. "[T]he validity of a search of a defendant conducted after probable cause to arrest him has arisen is unaffected by the fact that the search comes before the arrest." State v. James, 526 So.2d 188, 190 (Fla. 3d DCA 1988); Thomas v. State, 395 So.2d 280 (Fla. 3d DCA 1981). The search of the passenger compartment of the Cadillac was valid as a contemporaneous incident of the lawful custodial arrest of Smith. New York v. Belton, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981).
Finally, neither the record nor recent case law supports the trial court's conclusion that the inventory search of the trunk was pretextual and that the officers were required to offer alternatives to impoundment. Officer Del Guidice offered the following testimony:
Q Officer Del Guidice, at this time, did you ever advise Mr. Smith when he returned to the scene, or the passenger that you were merely holding them of any of the alternatives of moving or calling somebody to get the car?
A The fact that it was a rental vehicle and he was under arrest and he was not the authorized driver, I don't see any reason why I should ask him.
Q It's your position today that you didn't feel that you had to ask either Smith or the passenger, who knew the person who rented the car, of the alternatives of moving that car?
A The reason for that, sir, is that in prior dealings with rental companies, they do not allow an unauthorized driver to drive their vehicle and do not want them responsible for that vehicle.
Officer Hein testified as to the standard police procedure concerning impoundment of rental vehicles:
Q When [faced] with a rental vehicle that's unattended by an unauthorized driver, what procedure would you follow if it was improperly parked?
* * * * * *
A With these rental vehicles, what we usually do is call the rental company and advise them that, you know, we have their vehicle and would they like to come get it.
I've even done it with people that I've stopped that are driving a rental vehicle that are not authorized on the contract to be driving the car. I found that the rental companies are actually pleased that you call them. I guess they are afraid of their cars being damaged or destroyed or whatever.
So you call them and they come get it.
Q Is an inventory done on a rented vehicle?
A Correct.
The testimony of both officers establishes that it is standard police procedure to conduct an inventory before contacting a rental car company to pick up its vehicle.
In Colorado v. Bertine, 479 U.S. 367, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987), the Supreme *1231 Court held that the fourth amendment is not violated where the police, pursuant to a lawful custodial arrest and in accordance with standardized procedures, impound an individual's vehicle and conduct a warrantless inventory search. We reject Smith's contention that the standard for inventory searches elucidated in Miller v. State, 403 So.2d 1307 (Fla. 1981), survives Bertine. We are persuaded by the reasoning of our sister court in State v. Williams, 516 So.2d 1081 (Fla. 2d DCA 1987), that Bertine obviates the Miller requirement that an arrested driver be offered an alternative to impoundment prior to police conducting an inventory search of the driver's vehicle. In Robinson v. State, 526 So.2d 164 (Fla. 4th DCA 1988), the fourth district followed Williams on facts that involved the impoundment of a rental vehicle and a subsequent inventory search which revealed contraband.[3]
Despite Smith's contentions, his rights were not violated by the officers' failure to consult with him and offer alternatives to impoundment as directed by the Metropolitan Dade County Code.[4] Counties are political subdivisions of the state. Their powers are derived from and limited not only by the constitution and laws of the State of Florida, Fla. Const. art. I, § 12; Townley v. Marion County, 343 So.2d 1312 (Fla. 1st DCA 1977), cert. denied, 354 So.2d 982 (Fla. 1978), but also by the provisions of the United States Constitution. Hollywood, Inc. v. Broward County, 431 So.2d 606 (Fla. 4th DCA), rev. denied, 440 So.2d 352 (Fla. 1983). "Florida courts, when construing the provisions of article I, section 12, are required by the plain language of section 12 to conform their decisions to follow fourth amendment analysis as set forth by the United States Supreme Court." Shaktman v. State, 529 So.2d 711, 714-715 (Fla. 3d DCA 1988).[5] Because the search and seizure provision of the Florida Constitution may not impose a higher standard than that of the fourth amendment to the United States Constitution, as interpreted by the Supreme Court, State v. Jones, 417 So.2d 788, 791 n. 1 (Fla. 5th DCA 1982) (Cowart, J., specially concurring), it necessarily follows that a county may not, through an ordinance, impose a *1232 higher standard. A police officer's alleged noncompliance with a county ordinance provision does not  indeed cannot  affect fourth amendment considerations regarding the admissibility of evidence in state trial courts.
For the foregoing reasons, we reverse the order of suppression and remand for further proceedings.
Reversed and remanded.
NOTES
[1] Section 322.15(1), Florida Statutes (1985), provides as follows:

322.15 License to be carried and exhibited on demand. 
(1) Every licensee shall have his operator's or chauffeur's license in his immediate possession at all times when operating a motor vehicle and shall display the same upon the demand of a patrol officer, peace officer, or field deputy or inspector of the department. At the time of the incident, failure to display a driver's license was an arrestable offense. § 318.14(1), Fla. Stat. (1985). The citation of section 322.34 on the arrest form was apparently a scrivener's error as the narrative of the arrest report makes clear that Smith was arrested for failure to produce a driver's license.
[2] The state concedes the correctness of the trial court's findings that the Cadillac was not stolen and that Smith did not abandon the vehicle. These findings, however, are immaterial to our analysis.
[3] We recognize that our sister court has reached a different conclusion in Green v. State, 528 So.2d 1233 (Fla. 1st DCA 1988), regarding the necessity of offering a driver or owner an alternative to impoundment of his vehicle. To the extent that Green relies on the continuing viability of Miller v. State, 403 So.2d 1307 (Fla. 1981), which we believe has been overruled by the reasoning of Colorado v. Bertine, 479 U.S. 367, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987), we certify conflict to the Florida supreme court.
[4] The Code provides in pertinent part:

Sec. 30-384. Impounding vehicles.
(a) A police officer is authorized to remove a vehicle to the nearest garage or other place of safety, or to a garage designated or maintained by the county or by a municipality under the circumstances hereinafter enumerated:
* * * * * *
(6) When the driver of such vehicle is taken into custody by a law enforcement officer and such vehicle would thereby be left unattended upon a street; provided, however that the officer shall, prior to impounding a vehicle, afford the owner or the driver at his or her option, a reasonable opportunity in light of the circumstances in which to provide for the removal of the vehicle within a reasonable length of time... .
Prior to impounding such vehicle pursuant to this subsection, the police officer shall reasonably attempt to inform the owner or driver of said vehicle of the various alternatives to impounding... .
§ 30-384, Metro. Dade Co. Code (1972).
[5] Article I, section 12, provides as follows:

§ 12. Searches and seizures
The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures, and against the unreasonable interception of private communications by any means, shall not be violated. No warrant shall be issued except upon probable cause, supported by affidavit, particularly describing the place or places to be searched, the person or persons, thing or things to be seized, the communication to be intercepted, and the nature of evidence to be obtained. This right shall be construed in conformity with the 4th Amendment to the United States Constitution, as interpreted by the United States Supreme Court. Articles or information obtained in violation of this right shall not be admissible in evidence if such articles or information would be inadmissible under decisions of the United States Supreme Court construing the 4th Amendment to the United States Constitution.
Fla. Const. art. I, § 12.